# EXHIBIT L

BEFORE THE AMERICAN ARBITRATION ASSOCIATION

**BRIAN A. WILKINS, Claimant**

**v.**

**PAYPAL, INC., Respondent.**

## AAA No. 01-22-0000-9181

## COUNTER-MOTION FOR SUMMARY JUDGEMENT AND RESPONSE

Claimant Brian Wilkins ("Wilkins" or "Claimant") hereby submits this Counter-Motion for Summary Judgment and Response to Respondent PayPal ("PayPal") Motion for Summary Judgment. We are once again at a point where PayPal is complicating a very simple matter, and now even taking what appears to be a second strange, unsettling master-slave position. Many of these briefs filed by the Claimant are repetitive. But the former arbitrator set it up this way.

However, once again, there is no denying that the Claimant unsubscribed/opted-out of all PayPal communications in no uncertain terms **THREE TIMES**. PayPal, voluntarily and on its own volition, ended the business relationship between the Claimant and PayPal on August 9, 2021. That's the end of it. But PayPal continues putting forth these vexatious, baseless, meritless arguments to save face. Again all of this is very simple.

This Counter-Motion will quickly address all of PayPal's baseless arguments and claims in its Motion for Summary Judgment and set forth again the inarguable timeline as to the case and controversy herein. Once the arbitrator is able to cut through the white noise that PayPal continues presenting, they will see a simple case which PayPal violated California Business & Professions Code § 17529 *et seq.* and continues to this day, to interpret its own User Agreement in bad faith, resulting in breach of contract.

## I. **PayPal continues its desperate attempt to escape liability with an unenforceable Delaware choice-of-law provision**

Wilkins has already laid out, in several places throughout this arbitration, that PayPal's Delaware choice-of-law provision is unenforceable in this case. The Delaware Court of Chancery has ruled on several occasions that Delaware corporations may not use choice-of-law provisions to "circumvent state policy-based contractual prohibitions through the promiscuous use of such [choice-of-law] provisions." Said promiscuous use, like in this case, "would eliminate the right of the default state to have control over enforceability of contracts concerning its citizens." *Ascension*

*Ins. Holdings, LLC v. Underwood*, C.A. No. 9897-VCG, 6 (Del. Ch. Jan. 28, 2015)[1].

The only purpose of PayPal's promiscuous Delaware choice-of-law provision is to shield the company from California consumer laws, to circumvent California consumer laws - the state in which the company is headquartered. PayPal states in its Summary Judgment brief that California laws "simply do not apply to [Wilkins'] relationship with PayPal." All of the harassing spam emails from PayPal originated from San Jose, California; the original Notice of Claim was served on PayPal in October 2021, to the company's registered agent in Glendale, California; and PayPal is headquartered and has a principal place of business in San Jose, California. The Claimant has never stepped foot in the state of Delaware in his life and has no business ties to Delaware. The obvious truth herein, to a reasonable person, is that Delaware law and the state of Delaware have absolutely nothing to do with this case.

In determining whether a choice-of-law provision is enforceable, the Court must determine (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests

---

[1] https://casetext.com/case/ascension-ins-holdings

is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. *Nedlloyd Lines B.V. v. Superior Court, 3 Cal. 4th 467, 11 Cal. Rptr. 2d 330, 834 P.2d 1148 (1992)*[2]. If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a fundamental policy of California. If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy. *Id*. See also *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318 (9th Cir. 2012).

The PayPal Delaware choice-of-law, for a company headquartered in California, would completely eliminate Wilkins' claims and provide PayPal immunity from California consumer laws. "By contractual choice of law, therefore, the substantive basis for [the Claimant's] statutory claims has been eliminated, thus blocking him from pursuing his claims at all, not merely burdening [his] pursuit in arbitration. This [choice-of-law] aspect of the Agreement is plainly obnoxious to public policy in California. Under California law, statutory rights may be waived only if "(1) the statute does not prohibit waiver, (2) the statute's public purpose is incidental to its primary purpose, and (3) the waiver does not seriously undermine any

---

[2] https://law.justia.com/cases/california/supreme-court/4th/3/459.html

public purpose the statute was designed to serve." *Pinela v. Neiman Marcus Group, Inc.*, 238 Cal. App. 4th 227 (2015), review denied, 2015 Cal. LEXIS 6186 (Sept. 16, 2015)[3]. See also *Lanigan v. City of Los Angeles* (2011) 199 Cal.App.4th 1020, 1030, citing *Sharon S. v. Superior Court* (2003) 31 Cal.4th 417, 426.

The Ninth Circuit, just last year, ruled that California statutes of limitation laws applied to a Delaware corporation physically headquartered in California. *Rustico v. Intuitive Surgical, Inc.*, 993 F.3d 1085, 1096 (9th Cir. 2021).

Any reasonable person can see that PayPal's Delaware choice-of-law provision is not only irrelevant to this case (other than to provide PayPal immunity from California consumer laws), but is also obnoxious and irrational in the eyes of the Courts. The sole purpose of said provision is to provide PayPal unlawful immunity from California consumer laws.

The Delaware choice-of-law provision in PayPal's User Agreement is unenforceable in this case.

---

[3] https://caselaw.findlaw.com/ca-court-of-appeal/1706197.html

## II. PayPal's second master-slave argument, that Wilkins somehow "needed" their spam emails after he opted-out three times and PayPal voluntarily discontinued the business relationship, fails under the law

PayPal continues with its stance that the harassing, illegal spam emails, numbering 96 now (two of which were sent after May 2022), were "important information about his PayPal account," and not spam. The facts are as follows.

PayPal, on its own volition, terminated the business relationship between itself and the Claimant on August 9, 2021. The headline of the email informing the Claimant of his account termination says "You can't use PayPal anymore." See Demand for Arbitration (UPDATED), Exhibit A. PayPal continues using word-salad semantics about this account termination (e.g. "limited Wilkins' account"). But the Claimant could no longer accept payments on the PayPal platform because the account was terminated by PayPal. The business relationship ended on that day, period. PayPal, in its Statement of Undisputed Facts (at 23) even said, "Wilkins was no longer able to utilize PayPal to conduct business." There's no other purpose for PayPal other than accepting payments.

But let's say, for the sake of argument, that PayPal is correct that a preexisting business relationship existed between itself and the Claimant after August 9, 2021.

Cal. Bus. & Prof. Code § 17529(l) states: "Commercial e-mail advertisements sent pursuant to the exemption provided for a preexisting or current business relationship **shall provide the recipient of the commercial e-mail advertisement with the ability to "opt-out"** from receiving further commercial e-mail advertisements by calling a toll-free telephone number or **by sending an "unsubscribe" e-mail to the advertiser offering the products or services in the commercial e-mail advertisement.**[4] Emphasis added.

The Claimant opted-out of receiving any further email **THREE TIMES**: on August 17, 2021 by sending an email to service@paypal.com; on August 22, 2021 by logging into PayPal's internal email system and ordering them to stop the spam; and again on September 8, 2021 by sending an email to service@paypal.com. See Demand for Arbitration (UPDATED). It simply does not matter how PayPal attempts to characterize its spam emails as some sort of important business communications. The Claimant opted-out/unsubscribe, pursuant to California law, from PayPal

---

[4] https://law.justia.com/codes/california/2005/bpc/17529-17529.9.html

spam **THREE TIMES.** To a reasonable person, that means stop sending all emails. PayPal, by continuing to send the spam emails after being told **THREE TIMES** to stop, violated the foregoing provision of Cal. Bus. & Prof. Code, and were in breach of contract as a result of sending the spam.

PayPal's 96 spam emails were malicious and misleading due to the subject lines indicating that the Claimant still had an active account with PayPal, or was potentially receiving payments or could receive payments, when he did not/could not because of PayPal's termination of said business relationship. Since PayPal voluntarily and on its own volition, terminated the business relationship with the Claimant and did not allow him to accept payments after August 9, 2021, OF COURSE all attempted payments would fail. The Claimant did not want these spam, harassing emails, and made that very clear **THREE TIMES**. All 96 emails are attached herein. See Exhibit 1 (PayPal 96 spam emails).

Once again, it is unlawful for a business based in California to send spam emails that have "a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message. Cal. Bus. & Prof. Code § 17529.5(a)(3). California law calls for liquidated

damages of $1,000 per spam email, in this case, $96,000 total. *Id.* At

17529.8(B).

All PayPal is doing in attempting to defend itself against violating

California law is using semantics and deflections. The facts and exhibits

speak for themselves. PayPal breached its own User Agreement by

refusing to execute, in good faith, its Electronic Communication Policy after

the Claimant opted out three times, including one time by logging into the

company's internal email system. See Demand for Arbitration.

## III. Counter-motion for summary judgment

The Claimant has already filed a Motion to Dismiss PayPal's

counterclaims due to the company already clearing the Claimant of any

violations of its "Acceptable use Policy." But there's also a glaring issue with

PayPal's entire counterclaim. The company alleges that the Claimant was

selling a cure for so-called "COVID-19." PayPal presents no evidence of

this claim. The company could simply contact customers and even bribe

them to say, under oath in a written statement, something to the effect that

**thecovidblog.com** offered a cure for so-called COVID-19. But PayPal

knows that **thecovidblog.com** does not even recognize so-called

COVID-19 as a real disease; and knows that **thecovidblog.com**

subscribers would laugh at such an allegation. COVID-19 is simply a media marketing fear campaign, according to thecovidblog.com. The reason PayPal has no evidence of the blog selling a "cure" for so-called COVID-19 is because there no such evidence exists. The first master-slave indication from PayPal is that it is simply declaring that **thecovidblog.com** sells a cure for so-called COVID-19 because "PayPal says so." That simply does not hold up in a court of law. PayPal's counterclaims are already barred due to the company's own administrative proceedings that cleared the Claimant of any alleged "violations of Acceptable Use Policy" (*res judicata*). PayPal, again, is simply attempting to complicate a simple matter with white noise and malicious, baseless filings.

PayPal's only defense against its violations of California's spam laws is its unenforceable Delaware choice-of-law provision. Further, it is also important to repeat the words of California State Senator Kevin Murray, D-Culver City, who authored and sponsored SB 186, now codified as Cal. Business & Professions Code § 17529 *et seq.*: "We are saying that unsolicited e-mail cannot be sent and there are no loopholes."[5]

Reason has to prevail at some point in these proceedings. All PayPal had to do is stop sending the Claimant emails when he ordered them to do

---

[5] https://www.deseret.com/2003/9/24/19786103/california-oks-toughest-anti-spam-law-in-nation

so three times in August and September of 2021; and all of this would have been avoided. Now the company must pay for its transgressions. PayPal decided to hitch its wagon to the big Pharma industry and censor/de-platform any/all media outlets (i.e. **thecovidblog.com**) that do not believe every single illness since 2020 is "COVID-19" and that the only cure is mRNA and viral vector DNA injections ("vaccines"). Journalism ("the press") is the only occupation specifically listed in the U.S. Constitution's First Amendment for a reason. These are incredibly Biblical-type times and only true journalism, which is nearly extinct in 2022, provides people some avenues to truth.

PayPal's Delaware choice-of-law provision is unenforceable. PayPal appears to have abandoned its "preemption" claims against the Claimant in its Summary Judgment motion. PayPal offers no evidence of the Claimant "selling a cure" for so-called COVID-19 other than "we're PayPal and we say so." PayPal acknowledges that the Claimant emailed them THREE TIMES to opt-out of all further emails, despite PayPal trying to spin said opt-outs in its defense. This is quite the simple case once the white noise is cut out of the picture. Further, PayPal has already lied and been untruthful with the AAA and the Claimant by pretending not to have a significant relationship with the former arbitrator that was removed from this case due

to evident partiality. The way PayPal has conducted itself throughout this case and controversy is *modus operandi* for this company.

The arbitrator, after analyzing the case law and facts herein, and all briefs filed with the AAA since March 2022, must dismiss PayPal's counterclaims and award the Claimant $96,000 in statutory liquidated damages.

Respectfully submitted on this 4th day of October, 2022.

/s/ Brian A. Wilkins

304 S. Jones. Blvd. #1576

Las Vegas, NV 89107

support@veracityobjectives.com

702-218-3225

## **CERTIFICATE OF SERVICE**

Claimant hereby certifies that the foregoing document and exhibit was electronically delivered on October 4, 2022 to:

Tara Z. Hall: tara.hall@dentons.com

Daniel J. Johnston: daniel.johnston@dentons.com

Morgan J. Hanson: morgan.hanson@dentons.com

PayPal Litigation Department: litigationdept@paypal.com

AAA Pro Se Admin: prosemanager2@adr.org

# EXHIBIT M

**BEFORE THE AMERICAN ARBITRATION ASSOCIATION**
**Commercial Arbitration Tribunal**

| | |
|---|---|
| **BRIAN A. WILKINS** | AAA No. 01-22-0000-9181 |
| Claimant, | |
| v. | **Amended Rulings** |
| | **on Dispositive** |
| **PAYPAL, INC.,** | **Motions** |
| Respondent. | **Amended Orders of** |
| | **Dismissal** |

This arbitration was assigned to the undersigned on January 5, 2023, after the disqualification of a previous arbitrator. A preliminary hearing was held with the parties wherein the parties requested this arbitrator rule on the pending dispositive motions. It was agreed another status hearing would be held if needed after the arbitrator reviewed the pending motions. The undersigned issued an order on February 23, 2023. Thereafter, PayPal filed a Motion to Amend Dismissal Order and Dismissal of Counterclaim. The undersigned grants this Motion and makes the following **AMENDED DECISION and ORDER:**

1. Dispositive Motions were filed with the previous arbitrator and needed resolution:

    a. PayPal's Motion for Summary Judgment

#3426055

  b. Wilkins' Counter-Motion for Summary Judgement

  c. Wilkins' Motion to dismiss PayPal's Counterclaim based on res

   judicata/issue preclusion.

2. This case originated with PayPal kicking Wilkins out of PayPal. Following this

 action, PayPal continued to email Wilkins to windup his account with

 PayPal and notify him of its continuing to receive money from Wilkins'

 customers for their purchases.[1] Wilkins adequately summarized the

 current status of this arbitration:

> When it's all said and done, the Claimant accepted
> PayPal's right to shut down his account on August 9, 2021.
> He didn't fight it at all because the User Agreement says
> PayPal has that right; and the two parties could have
> quietly parted ways.

3. Wilkins brought this arbitration seeking $100,000 damages for the emails

 received from PayPal trying to wrap up Wilkins's account. Wilkins has

 submitted 190 pages of emails in support of his claims. The arbitrator has

 reviewed the emails. Wilkins claims these emails were spam and violated

 state laws concerning spam or junk emails. Wilkins attempted to stop PayPal

 from sending these emails but was unsuccessful. The email communications

---

[1] January 14, 2021, Wilkins, on behalf of Veracity Objectives, LLC, opened the PayPal account.
Throughout this decision the arbitrator will refer to the LLC and Wilkins as "Wilkins."

received by Wilkins were not spam or advertising, but rather, were legitimate and reasonable communications with Wilkins concerning his account and the trailing consequences of his internet sales. PayPal had no choice in this regard, as they continued receiving payments from Wilkins' customers.

4. **PayPal's Motion for Summary Judgement**. The parties agreed Delaware law applied to any legal disputes concerning this contract. Wilkins claims PayPal violated California and Nevada state laws pertaining to spam. Even if these other states' laws applied to the relationship and communications between PayPal and Wilkins, since the communications sent to Wilkins were not advertising in any way, those statutes are not implicated. Also, Wilkins' breach of contract claim fails as a matter of law because there has been no showing PayPal breached any provision in the parties' agreement. PayPal has substantially performed all of its contractual obligations. PayPal's Motion for Summary Judgment is **GRANTED**. Wilkins' claim is **DISMISSED with prejudice**.

5. **Wilkins' Counter-Motion for Summary Judgement.** Wilkins asks that Summary judgment be granted regarding the choice of law that applies in interpreting the parties' contract. The parties agreed in their agreement:

You agree that, except to the extent inconsistent with or

3

> preempted by federal law and except as otherwise stated in
> this user agreement, the laws of the State of Delaware,
> without regard to principles of conflict of laws, will govern this
> user agreement and any claim or dispute that has arisen or
> may arise between you and PayPal.

The choice of law does not matter in this case. There has been no evidence of a violation of California or Nevada law. There has been no showing that the choice of law provision should be voided – the parties agreed. There has not been any legal challenge to the Delaware clause as to unconscionability, estoppel, or waiver. Wilkins' Counter-Motion for Summary Judgment is **DENIED**.

6. **Wilkins' Motion to dismiss PayPal's Counterclaim based on res judicata/issue preclusion.** Wilkins argues res judicata should stop PayPal from claiming Wilkins was in breach of some policy resulting in his removal from PayPal. This is not an issue in this arbitration. The legal requirements of res judicata have not been satisfied. Finally, the parties agreed in their contract the doctrine does not apply:

> The arbitrator(s) shall not be bound by rulings in prior
> arbitrations involving different PayPal customers, but is/are
> bound by rulings in prior arbitrations involving the same PayPal
> customer to the extent required by applicable law.

4

Wilkins Motion to dismiss PayPal's Counterclaim is **DENIED.**

7. On March 10, 2023, PayPal dismissed its liquidated-damages Counterclaim with Prejudice.

8. Upon PayPal's dismissal of their liquidated-damages Counterclaim, no claims remain to be adjudicated by AAA.

9. Costs are assessed as paid by the parties.

/S/ Michael J. Streit

March 31_____, 2023        _____

Michael Streit, AAA Arbitrator

5

# EXHIBIT N

## BEFORE THE AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| BRIAN A. WILKINS, | |
| Claimant, | AAA No. 01-22-0000-9181 |
| v. | |
| PAYPAL, INC., | |
| Respondent. | |

## PAYPAL, INC.'S MOTION TO AMEND DISMISSAL ORDER AND DISMISS ITS COUNTERCLAIM

Pursuant to R–52 (Modification of Award), Respondent PayPal, Inc. ("PayPal") files this Motion to Amend the February 23, 2023 Dismissal Order (served on March 1, 2023) and Dismiss its Counterclaim against the Claimant Brian A. Wilkins ("Wilkins") to correct a clerical error.

**I.   Procedural History**

1.   On March 3, 2022, Wilkins filed an Amended Demand for Arbitration in this matter.

2.   On April 12, 2022, PayPal filed its Answering Statement and Counterclaim ("Counterclaim"). The Counterclaim sought liquidated damages against Wilkins for his breaches of PayPal's User Agreement.

3.   As proceedings continued, on July 13, 2022, AAA notified the parties that Stephen D. Marso had been appointed as arbitrator in this matter.

4.   On August 5, 2022, the Arbitrator held a preliminary hearing.

5.   On August 5, 2022, the Arbitrator entered a Scheduling Order setting forth certain deadlines for the case.

6.     Thereafter, on August 10, 2022, Wilkins submitted a letter to the Pro Se Manager alleging partiality on Arbitrator Marso's behalf, claiming he had a past or present, personal or professional relationship with PayPal's attorney Tara Hall. PayPal filed a response on August 19, 2022.

7.     In compliance with the Scheduling Order entered in the case, PayPal filed its Statement of Claims on August 19, 2022, and its statement of Defenses on September 6, 2022, while the partiality issue was pending.

8.     Wilkins filed his Statement of Defenses on September 6, 2022.

9.     On September 15, 2022, Wilkins filed a "Motion to Dismiss PayPal Counterclaims for Res Judicata Preclusion."

10.     On September 16, 2022, PayPal filed its Motion for Summary Judgment and accompanying briefing and documents. PayPal moved for summary judgment only on Wilkins's claims against PayPal. Specifically, it moved with respect to Count I of Wilkins's Demand alleging breach of contract, Count II of Wilkins's Demand alleging violations of California anti-spam statutes, and Count III of Wilkins's Demand alleging violations of Nevada anti-spam statutes.

11.     PayPal did not move for summary judgment on its liquidated damages Counterclaim against Wilkins.

12.     On September 21, 2022, AAA notified the parties that Arbitrator Marso would be removed as an arbitrator in the matter.

13.     On October 4, 2022, Wilkins filed a Counter-Motion for Summary Judgment, generally challenging PayPal's liquidated damages counterclaim, but primarily challenging the enforcement of the Delaware choice-of-law provision in PayPal's User Agreement.

14.     Following the objection to a second arbitrator appointed by the AAA, on November 11, 2022, AAA notified the parties that the Honorable Michael Streit was being appointed as arbitrator.

15.     Ultimately, Arbitrator Streit was confirmed as arbitrator, and a Preliminary Hearing was scheduled for January 25, 2023.  At the preliminary hearing, the parties requested Arbitrator Streit to rule on the pending dispositive motions.

16.     On February 23, 2023, Arbitrator Streit filed a dismissal order ("Dismissal Order") on the pending dispositive motions.  The order made the following rulings:

a.     On PayPal's Motion for Summary Judgement, Arbitrator Streit granted the motion and dismissed Counts I, II and III of Wilkins's Amended Demand for Arbitration, with prejudice.

b.     Arbitrator Streit denied Wilkins's Counter-Motion for Summary Judgment on PayPal's liquidated damages counterclaim.

c.     On Wilkins's Motion to Dismiss PayPal's liquidated damages Counterclaim based on res judicata/issue preclusion, Arbitrator Streit denied the motion, finding the asserted theories were inapplicable.

d.     Finally, the order went on deny "PayPal's Motion for Summary Judgment supporting its Counterclaim."

17.     PayPal, however, had not filed a motion for summary judgment seeking judgment as a matter of law on its Counterclaim asserted against Wilkins.  PayPal's Motion for Summary Judgment sought only dismissal of Counts I, II and III of Wilkins's Amended Demand for Arbitration.

18.     PayPal seeks amendment of the Arbitrator's February 23, 2023 Dismissal Order to correct the Order's clerical error that references and rules upon a motion for summary judgment PayPal had not filed.

## II.     Motion to Amend Dismissal Order

19.     Each of the preceding paragraphs are incorporated herein by reference.

20.     R–52(a) of the Commercial Arbitration Rules addresses amending Arbitration Awards and states as follows:

> Within 20 calendar days after the transmittal of any award, any party, upon notice to the other parties, may request that the arbitrator, through the AAA, interpret the award or correct any clerical, typographical, or computational errors in the award. The arbitrator is not empowered to re-determine the merits of any claim already decided. The other parties shall be given 10 calendar days to respond to the request. The arbitrator shall dispose of the request within 20 calendar days after transmittal by the AAA to the arbitrator of the request and any response thereto.

21.     As set forth above, PayPal did not move for summary judgment on its Counterclaim against Wilkins.  Instead, it sought only dismissal of Counts I, II and III of Wilkins's Amended Demand for Arbitration filed against PayPal.

22.     The Dismissal Order, therefore, contains a clerical error that should be corrected.

23.     PayPal respectfully requests the Arbitrator amend the Dismissal Order by striking the provision in  section 7 that references a ruling on the merits of PayPal's Counterclaim. PayPal submits a proposed, corrected Dismissal Order herewith.

## III.     PayPal's Dismissal of Its Counterclaim.

24.     Each of the preceding paragraphs are incorporated herein by reference.

25.     PayPal hereby dismisses its Counterclaim against Wilkins with prejudice.

26.     After dismissal of PayPal's Counterclaim against Wilkins, no claims remain to be adjudicated by the AAA.

**WHEREFORE**, PayPal respectfully requests the Arbitrator grant its Motion to Amend Dismissal Order to: (1) amend the Dismissal Order by striking section 7 of the Dismissal Order; (2) acknowledge PayPal's dismissal of its Counterclaim with prejudice; (3) and state that no claims remain to be adjudicated by the AAA.

Respectfully submitted,

By: */s/Tara Z. Hall*
Tara Z. Hall, Esq.
Daniel J. Johnston, Esq.
Dentons Davis Brown, P.C.
215 10th Street, Suite 1300
Des Moines IA 50309-3993
Phone: (515) 246-7998
Direct Fax: (515) 471-7998
Email: Tara.Hall@dentons.com
Email: Daniel.Johnston@dentons.com


By: */s/Morgan J. Hanson*
Morgan J. Hanson, Esq.
Dentons Cohen & Grigsby P.C.
625 Liberty Avenue, 5th Floor
Pittsburgh, PA 15222-3152
Phone: (412) 297-4900
Direct Fax: (412) 209-1975
Email: morgan.hanson@dentons.com

*Counsel for Respondent, PayPal, Inc.*

COPY TO:

Brian Wilkins
304 S. Jones Blvd, #1576
Las Vegas, NV 89107
Phone: 702-218-3225
Email: support@veracityobjectives.com
Claimant

<table>
<tr><td colspan="2" align="center"><strong>PROOF OF SERVICE</strong></td></tr>
<tr><td colspan="2">The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on March 10, 2023 by:</td></tr>
<tr><td>☐ U.S. Mail</td><td>☐ FAX</td></tr>
<tr><td>☐ Hand Delivered</td><td>☐ Overnight Courier</td></tr>
<tr><td>☐ Federal Express</td><td>☒ Other: Email</td></tr>
<tr><td colspan="2">Signature:  /s/ Tara Z. Hall</td></tr>
</table>

5

# EXHIBIT O

BEFORE THE AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| BRIAN A. WILKINS, | |
| Claimant, | AAA No. 01-22-0000-9181 |
| v. | |
| PAYPAL, INC., | |
| Respondent. | |

## ANSWERING STATEMENT AND COUNTERCLAIM OF PAYPAL, INC.

Respondent PayPal, Inc. ("PayPal"), by and through its counsel Dentons Davis Brown, P.C., hereby files this Answering Statement and Counterclaim in response to Claimant's Amended Demand for Arbitration. PayPal reserves the right to amend this Answering Statement to assert additional facts, defenses, or counterclaims that are not yet known to PayPal. PayPal generally denies all allegations in the Demand for Arbitration, and by way of further response, states as follows:

### I.   ANSWERING STATEMENT

1.     PayPal is a digital payment service that allows its users to manage and move their money securely over the Internet.

2.     On January 14, 2021, Brian Wilkins (on behalf of Veracity Objectives, LLC) opened a PayPal account associated with account number 1975682695226964400 and the following email address: support@veracityobjectives.com.

3.     All users agree to PayPal's User Agreement as a condition of opening a PayPal account and using PayPal's services. Attached hereto as Exhibit A is a true and correct copy of PayPal's Account User Agreement effective November 9, 2020 (the "User Agreement"). (Ex. A at 1).

4.      PayPal periodically updates its User Agreement and provides its users with advance notice of substantive changes.  The User Agreement provides that "[b]y continuing to use our services after any changes to this user agreement, you agree to abide and be bound by those changes."  (Ex. A at 1).[1]

5.      PayPal provides all users a copy of the User Agreement upon opening a PayPal Account, and it is also available on their website.

6.      The User Agreement Contains the terms and conditions for using PayPal's services.  (Ex. A at 1).[2]

7.      The User Agreement identifies certain "Restricted Activities" that all users agree to refrain from engaging in, including but not limited to violation of PayPal's Acceptable Use Policy ("AUP").[3]  (Ex. A at 41–43).

8.      PayPal's AUP prohibits the use of the PayPal services "for activities that . . . violate any law, statue, ordinance or regulation," or "relate to transactions involving . . . products that present a risk to consumer safety . . . [or] items that encourage, promote, facilitate or instruct others to engage in illegal activity" or that "involve the sales of products or services identified by government agencies to have a high likelihood of being fraudulent."  Attached hereto as Exhibit B is a true and correct copy of PayPal's AUP effective March 19, 2020.[4]

---

[1] As set forth below, Claimant voluntarily and continuously used his account through and until it was limited on August 9, 2021.  The most updated draft of the user agreement at the time Claimant's account was limited went into effect on August 2, 2021.  This updated User Agreement contains the same provision that continued use of PayPal's services manifests agreement to be bound by changes to the User Agreement.

[2] The most recent applicable User Agreement contains the same provision.

[3] The most recent applicable User Agreement contains the same provision.

[4] The most recent applicable Acceptable Use Policy, effective as of May 6, 2021, contains the same provisions.

9.      Similarly, the Restricted Activities section of the User Agreement states that "you must not . . . sell counterfeit goods" or "[p]rovide false, inaccurate or misleading information . . . ."[5] (Ex. A at 41–42).

10.      If PayPal believes a user has engaged in any "Restricted Activities," the User Agreement provides PayPal may, among other things, terminate the user agreement, limit the user's PayPal account or any of the PayPal services, and hold the balance in the business PayPal Account.[6] (Ex. A at 43–44).

11.      "Limitations are implemented to help protect PayPal buyers and sellers when [PayPal] notice[s] restricted activities, an increased financial risk, or activity that appears to [PayPal] as unusual or suspicious."[7] (Ex. A at 47). This includes a user's breach of the User Agreement or violation of the AUP.[8] (*Id.*).

12.      PayPal is not obligated to disclose the details of decisions to place a hold, limitation, or reserve on a customer's account.[9] (Ex. A at 45).

13.      The User Agreement provides that, if a seller violates the AUP, they also agree to pay liquidated damages to PayPal of $2,500 per violation:

> If you are a seller and you violate the Acceptable Use Policy, then in addition to being subject to the above actions you will be liable to PayPal for the amount of PayPal's damages caused by your violation of the Acceptable Use Policy. You acknowledge and agree that $2,500.00 U.S. dollars per violation of the Acceptable Use Policy is presently a reasonable minimum estimate of PayPal's actual damages considering all currently existing circumstances, including the relationship of the sum to the range of harm to PayPal that reasonably could be anticipated because, due to the nature of the violations of the Acceptable Use Policy, actual damages would be impractical or extremely difficult to calculate. PayPal may deduct such

---

[5] The most recent applicable User Agreement contains the same provisions.
[6] The most recent applicable User Agreement contains the same provision.
[7] The most recent applicable User Agreement contains the same provision.
[8] The most recent applicable User Agreement contains the same provision.
[9] The most recent applicable User Agreement contains the same provision.

damages directly from any existing balance in any PayPal account you control.[10]

(Ex. A at 44).

14.    The purpose of PayPal's assessment of liquidated damages is to cover damages resulting from AUP violations that are difficult, if not impossible to fully quantify, and are not easily estimated when PayPal enters into the User Agreement with a user.

15.    Users consent to receive electronic communications from PayPal in connection with their PayPal account as set forth in the Electronic Communication Delivery Policy, adopted by reference in the User Agreement.[11]   (Ex. A at 56).   A true and correct copy of the Electronic Communication Delivery Policy is included here as Exhibit C.

16.    The Electronic Communication Delivery Policy provides a procedure users must follow to withdraw their consent to electronic communications.  They may withdraw their "consent to receive communications electronically by writing to [PayPal] at 'Attn: Electronic Communications Delivery Policy, P.O. Box 45950, Omaha, NE 68145-0950', or by contacting [PayPal] via the 'Contact Us' link at the bottom of each page of the PayPal website." (Ex. C).

17.    On August 9, 2021, Claimant's account was limited for violating the AUP.  PayPal sent Claimant a notice explaining that his account had been permanently limited due to violation of PayPal's AUP.  Claimant had been actively using his PayPal account through and until August 9, 2021, when his account was limited.  Claimant's voluntary, continuous use of PayPal's services affirmed his acceptance of the User Agreement in effect at the time his account was limited.

---

[10] The most recent applicable User Agreement contains the same provision.
[11] The most recent applicable User Agreement contains the same provision.

18.    Specifically, Claimant's account was limited for encouraging illegal activities—Claimant was running a blog that promulgated misleading information about COVID-19, including anti-COVID statements about masks and hydroxychloroquine.

19.    Claimant was also selling white pine needles and marketed them on thecovidblog.com as a prevention and/or cure of the COVID-19 virus.

20.    The notice of limitation on Claimant's account explained Claimant could still log in and see his account information, but he could not send or receive funds. Claimant's allegation that PayPal terminated his account and severed all ties with Claimant on August 9, 2021, are false. The limitation on the account did not terminate the User Agreement or the account.

21.    After Claimant's account was limited, recurring payments from Claimant's customers continued to occur on Claimant's PayPal account. When these payments were made by Claimant's customers, PayPal emailed a notification to Claimant concerning this account activity.

22.    Such electronic notifications to Claimant do not give rise to a cause of action for breach of contract.

23.    Specifically, emails to Claimant notified him of attempted recurring payments by Claimant's customer, advised that the payments could not be processed, and advised of the buyer's contact information associated with the attempted transactions.

24.    On two occasions—on August 17, 2021, and September 8, 2021—Claimant responded directly to email notifications demanding the "spam" emails be stopped. However, unsolicited email responses to email notifications, such as Claimant's communications on these dates, are not received and reviewed by an individual at PayPal as the User Agreement provides express instructions as to how communication with PayPal must be conducted. Further, the

notification emails to which Claimant replied on these dates explicitly advised, "Please don't reply to this email.  To get in touch with us, click Help & Contact."

25.     The User Agreement, by reference to the Electronic Communication Delivery Policy, provides a procedure for withdrawing consent to receive electronic communications; namely, by writing to PayPal at "Attn: Electronic Communications Delivery Policy, P.O. Box 45950, Omaha NE 68145-0950" or through the "Contact Us" link at the bottom of the PayPal webpage.  (Ex. C)  Claimant's email response to the notifications did not comply with this contractual requirement.

26.     Claimant's Amended Demand for Arbitration Memorandum advises on page 3 that he messaged PayPal via the "Contact Us" link on August 22, 2021.  However, instead of clearly withdrawing his consent to receive electronic communications from PayPal, Claimant asked to stop receiving alleged "spam messages" and also included an inapposite reference to Iowa Code section 714E.1.[12]  Although Claimant also threatened legal action for receiving "any email," this was stated in the context of two complaints about alleged spam messages specifically as well as a reference to an inapplicable Iowa Code section.

27.     As described above, the emails to Claimant were not spam; they were notifications that customers were attempting to make payments through his PayPal account and that such payments could not be processed.

28.     Claimant alleges the email notifications violated section 17529(a)(3) of the California Business and Professional Code as well as Nevada Revised Statutes ("NRS") section 41.730.

---

[12]Iowa Code chapter 714E governs Foreclosure Consultants.  Subsection 1 of chapter 714E is the definitions section.

29.     PayPal disputes these assertions because these bodies of law do not apply in this case.  Claimant agreed to a Governing Law provision in the User Agreement, which states "the laws of the State of Delaware . . . will govern this user agreement and any claim or dispute that has arisen or may arise between [Claimant] and PayPal."[13]  (Ex. A at 68).

30.     Even if California or Nevada law could be applied here, PayPal's email notifications regarding attempted payment by Claimant's customers do not violate the spam-control measures those statutes address.

31.     California Business and Professional Code section 17529.2(a) holds, "[A] person or entity may not do any of the following: (a) initiate or advertise in an unsolicited commercial e-mail advertisement from California or advertise in an unsolicited commercial email advertisement sent from California."

32.     PayPal's notifications of failed payments are not advertisements.  California defines "Commercial e-mail advertisement" as "any electronic mail message **initiated for the purpose of advertising or promoting** the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit."  Cal. Bus. & Prof. Code § 17529.1(c).  The notification emails were not "advertising or promoting" any of the items listed in this definition, and they were not initiated for those purposes.

33.     PayPal's notifications of failed payments are also not advertisements under the Nevada Statute cited by Claimant.  Nevada Revised Statute ("NRS") section 41.730 states, "if a person transmits or causes to be transmitted to a recipient an item of electronic mail that includes an advertisement, the person is liable to the recipient for civil damages," and then goes on to list a series of exceptions.

---

[13] The most recent applicable User Agreement contains the same provision.

34.     NRS section 41.710 defines advertisement to mean "material that: . . . **[a]dvertises** for commercial purposes the availability or the quality of real property, goods or services; or . . . [i]s otherwise designed or intended to solicit a person to purchase real property, goods or services." Email notifications about payments that could not be processed advertise nothing and are not intended to solicit the purchase of real property, goods or services.

35.     Claimant has not and cannot identify any emails which constitute spam or advertisements. The emails to Claimant were notifications that customers were attempting to make payments through his PayPal account and that such payments could not be processed.

36.     The Claimant's claims lack merit and should be dismissed.

## II.     COUNTERCLAIM

### COUNT I (Breach of Contract)

37.     PayPal incorporates the allegations in its Answering Statement as if set forth fully herein.

38.     On or about January 14, 2021, Respondent and Claimant entered into the User Agreement.

39.     Under the terms of the User Agreement, Claimant had an obligation not to engage in any Restricted Activities, including not to violate PayPal's AUP.

40.     PayPal's AUP prohibits the use of the PayPal services "for activities that . . . violate any law, statue, ordinance or regulation," or "relate to transactions involving . . . products that present a risk to consumer safety . . . [or] items that encourage, promote, facilitate or instruct others to engage in illegal activity" or that "involve the sales of products or services identified by government agencies to have a high likelihood of being fraudulent."[14]  (Ex. B).

---

[14] The most recent applicable Acceptable Use Policy contains the same provisions.

41.    Similarly, the Restricted Activities section of the User Agreement states that "you must not . . . sell counterfeit goods" or "[p]rovide false, inaccurate or misleading information . . . ."[15] (Ex. A at 41–42).

42.    Because Claimant was actively using his PayPal account through and until August 9, 2021 when his account was limited, he therefore accepted the most current version of the User Agreement in effect at that time.  A true and correct copy of this User Agreement is included herein as Exhibit D.

43.    Claimant's activities violated the User Agreement and AUP.  Claimant was selling white pine needles as a preventative and/or cure for COVID-19 and receiving donations via thecovidblog.com.  Claimant's website promoted information about a "pine needle tea cure" and sold white pine needles for a "Pine Needle Tea."  Claimant's site also claimed that masks do more harm than good and made unfounded claims about Hydroxychloroquine.

44.    Claimant engaged in at least 152 transactions for the sale of pine needles.

45.    Claimant's acceptance of payments for this product in connection with Claimant's promotion of a "pine needle tea cure" violated the User Agreement and AUP.[16] (Ex. A at 41–42; Ex. B).

46.    On August 9, 2021, Claimant's account was limited for the above-described activity.  This limitation, however, did not terminate or cancel the User Agreement.  As to such limitations, the User Agreement states,

> Limitations are implemented to help protect PayPal, buyers and sellers when we notice restricted activities, an increased financial risk, or activity that appears to us

---

[15] The most recent applicable User Agreement contains the same provision.

[16] The most recent applicable User Agreement and Acceptable Use Policy were likewise violated as they contain the same relevant provisions.

as unusual or suspicious.  Limitations also help us collet information necessary for keeping your PayPal account open.[17]

(Ex. A at 47).  Although limited, PayPal did not invoke the termination provision in the User Agreement that allows PayPal to terminate a user agreement for any reason at any time upon notice and payment of unrestricted funds.[18]  (Ex. A at 57).

47.     The User Agreement gives PayPal the right to assess liquidated damages against a seller that violated its obligations under the AUP in the amount of $2,500 per violation.  (Ex. A at 44).  The User Agreement in effect at the time Claimant's account was limited also contains this provision.  (Ex. D at 42).

48.     PayPal is entitled under the User Agreement to deduct the damages directly from any existing PayPal balance in Claimant's control or to bring legal action for damages.  (Ex. A at 44; Ex. D at 42).

49.     After Claimant's account was limited, Claimant withdrew the remaining funds, and PayPal has not recovered any liquidated damages from Claimant's account.

50.     PayPal seeks to recover its damages for Claimant's Breach of Contract.  For Claimant's 152 transactions involving the sale of pine needles, PayPal seeks damages in the amount of $380,000.  PayPal may be cntitlcd to further damages if it detcrmincs any other transactions or donations through PayPal's services violated the User Agreement or Acceptable Use Policy.

51.     PayPal reserves the right to seek any additional damages that may be identified if it is determined that any of Claimant's other transactions are confirmed to be violative of PayPal's User Agreement.

---

[17] The most recent applicable User Agreement contains the same provision.
[18] The most recent applicable User Agreement contains the same provision.

Respectfully submitted,

By: /s/ *Tara Z. Hall*
Tara Z. Hall, Esq.
Daniel J. Johnston, Esq.
Dentons Davis Brown, P.C.
215 10th Street, Suite 1300
Des Moines, IA  50309-3993
Phone: (515) 246-7998
Direct Fax: (515) 471-7998
Email: tara.hall@dentons.com
Email: daniel.johnston@dentons.com

By: /s/ *Morgan J. Hanson*
Morgan J. Hanson, Esq.
Dentons Cohen & Grigsby, P.C.
625 Liberty Avenue, 5th Floor
Pittsburgh, PA  15222-3152
Phone: (412) 297-4900
Direct Fax: (412) 209-1975
Email: morgan.hanson@dentons.com

*Counsel for Respondent, PayPal, Inc.*

COPY TO

Brian Wilkins
304 S. Jones Blvd, #1576
Las Vegas, NV  89107
Phone: 702-218-3225
Email: support@veracityobjectives.com
Claimant

PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on April 12, 2022, by:

☐ U.S. Mail      ☐ FAX

☐ Hand Delivered   ☐ Overnight Courier

☐ Federal Express   X Other:  Email

Signature: /s/ Tara Z. Hall

11

# EXHIBIT P

Brian A. Wilkins
Veracity Objectives, LLC.
304 S. Jones Blvd. #1576
Las Vegas, NV 89107
702-218-3225
support@veracityobjectives.com

Paypal, Inc. (Delaware corporation)
330 N. Brand Blvd. Ste. 700
Glendale, CA 91203

# DEMAND FOR ARBITRATION

**March 3, 2022**

Dear Counsel:

Please be advised that Brian A. Wilkins, owner of Veracity Objectives, LLC. ("Claimant"), hereby submits this Demand For Arbitration for (1) breach of contract, (2) violations of California Business & Professions Code § 17529 et seq., and (3) violations of Nevada code NRS 41.730.

Veracity Objectives, LLC. (EIN 86-1346064, tax status: Partnership) is a New Mexico LLC. with offices in Las Vegas, Nevada and West Des Moines, Iowa. Though the PayPal account was supposed to be in the name of the business, all email correspondence to the Claimant from PayPal, and the PayPal Business Debit Card issued to the Claimant, had the name "Brian Wilkins" on them.

PayPal, Inc. ("Respondent" or "PayPal") is a Delaware corporation with its corporate headquarters located at 2211 North First Street, San Jose, CA 95131. The above address is the registered agent for PayPal, Inc.

This Demand for Arbitration is supported by the following memorandum of points and authorities.

## Background

Claimant opened a PayPal business account on January 14, 2021. PayPal required one of the LLC member's names to be on the account, which is Brian Wilkins, who owns 99% of the partnership. Despite trying to open the account in the business name, all email correspondence and the PayPal Business Debit Card issued by the Respondent were in the name "Brian Wilkins."

Claimant used PayPal without issue for the next seven months, fulfilling hundreds of transactions. Claimant issued three refunds out of those hundreds of transactions. There was one customer dispute, which Claimant immediately issued a refund. Our account was always in good standing.

Suddenly and unexpectedly, on August 9, 2021, Claimant received an email from the Respondent stating "You can't use PayPal anymore." The email further stated:

> *"After a review of your account activity, we've determined that you're in violation of PayPal's Acceptable Use Policy. As a result, your account has been permanently limited and you won't be able to conduct any further business with PayPal."*

**See EXHIBIT A (PayPal terminates account)**. Thus Respondent voluntarily, on its own volition, severed all business ties with Claimant on August 9, 2021. Claimant called the Respondent that day to ask for an explanation. The representative said that the Claimant "would need a subpoena" to learn why PayPal terminated the business relationship. PayPal has the right to terminate the business relationship, pursuant to its User Agreement. Claimant agreed, did not pursue further action, and found alternatives for collecting payments.

However, Respondent continued sending Claimant spam/advertising emails almost daily at Claimant's primary email address (support@veracityobjectives.com). Claimant reasonably felt that perhaps the Respondent's email system needed time to catch up (perhaps a week) and remove Claimant from its system, after the Respondent terminated the account on its own volition. That's a reasonable amount of time for the Respondent to get its act together. But the spam emails continued.

Claimant replied to one of the emails on August 17, 2021 stating, "We will be filing a lawsuit if you send one more spam email." **SEE EXHIBIT B**. The spam emails continued despite the communication from the Claimant to the Respondent to stop. Respondent has no "unsubscribe" option in these spam emails.

Respondent has a provision in its User Agreement called "Electronic Communication Delivery Policy (E-Sign Disclosure and Consent)." **SEE EXHIBIT C**. That provision of the User Agreement specifically states, "You may withdraw your consent to receive Communications electronically by … contacting us via the 'Contact Us' link at the bottom of each page of the PayPal website."

The Contact Us link takes you to a page where there is a "Message Us" cloud at the bottom of said page. **SEE EXHIBIT D**. To ensure there was documentation of this communication, Claimant chose this means to contact Respondent and opt-out of receiving any further spam emails.

After several clicks, the Message Us cloud takes you to the PayPal internal Messaging Center. Claimant sent the following message to the Respondent via said Messaging Center on August 22, 2021:

> *"We continually receive spam emails from your company. Please cease sending your email spam to us as we no longer do business with PayPal. You are violating Iowa Code Chapter 714E.1 and we will pursue legal action if we receive just one more spam email or any email from you. Consider this a Notice of Claim."*

**See EXHIBIT E (Official communication to stop spam)**. Claimant also attempted removing his email address from the account to stop the spam/advertising emails that day. But PayPal has no functionality that allowed Claimant to remove or change the email address from the defunct account.

The spam emails continued unabated, even after the official opt-out pursuant to the User Agreement. Claimant replied to yet another PayPal spam email on September 8, 2021 simply stating "STOP SPAMMING US." **SEE EXHIBIT F**.

Despite all of Claimant's efforts and hours put in to stop these spam/ advertising emails, Respondent sent a total of 91 spam/advertising emails to Claimant's primary email address from September 3, 2021 to November 19, 2021. All of the infringing emails were sent from "service@paypal.com," and from the company's primary place of business in San Jose, California. The spam emails finally ceased on November 19, 2021 only after the Respondent was served a Notice of Claim on October 29, 2021.

Respondent, after a few phone calls and email exchanges, refused to participate in any genuine talks to resolve the claims. Thus arbitration is now demanded.

## COUNT I - Breach of Contract

Claimant re-alleges the preceding paragraphs as if set forth fully herein.

A breach of contract is "[t]he wrongful, i.e., the unjustified or unexcused, failure to perform" the terms of a contract. 1 Witkin, Summary of Cal. Law (11th ed. 2017) Contracts, § 872. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." Restatement Second of Contracts § 205.

Respondent had the absolute right, pursuant to the User Agreement, to terminate the Claimant's account, even if the Claimant did not agree and Respondent gave no reasons for doing so. Frankly the Claimant would have preferred pursuing this case in the U.S. District Courts. However, there is also an arbitration provision in the User Agreement. There is also a very specific provision in the User Agreement to stop electronic communications, in this case, relentless, endless spam emails, once the Claimant exercises that right contained in the User Agreement.

Respondent, inexcusably and in bad faith, continued spamming the Claimant even after the Claimant exercised his rights pursuant to the User Agreement that are supposed to force the Respondent to stop the spamming. Respondent's behavior was simply malicious, deliberate and wanton, presumably to harass and harm the Claimant further after inexcusably (but within Respondent's rights) cutting off a major financial artery, i.e. the Claimant PayPal account.

California and Nevada law enumerate very specific, ascertainable damages for spamming, particularly when said spamming is a result of a breach of contract.

## COUNT II - Violations of California Business & Professions Code § 17529(a)(3).

"A person or entity **may not initiate** or advertise in an unsolicited commercial e-mail advertisement from California or advertise in an unsolicited commercial e-mail advertisement sent from California." Cal. Business & Professions Code § 17529.2(a). Emphasis added.

Commercial e-mail advertisements sent pursuant to the exemption provided for a preexisting or current business relationship shall provide the recipient of the commercial e-mail advertisement with the ability to "opt-out" from receiving further commercial e-mail advertisements by calling a toll-free telephone number or by sending an "unsubscribe" e-mail to the advertiser offering the products or services in the commercial e-mail advertisement. *Id.* At § 17529.1(l).

The increase in spam is not only an annoyance but is also an increasing drain on corporate budgets and possibly a threat to the continued usefulness of the most successful tool of the computer age. Spam filters have not proven effective. Because of the above problems, it is necessary that spam be prohibited and that commercial advertising e-mails be regulated as set forth in this article. *Id.* at §§ 17529(b), 17529(f), and 17529(m).

Spam is typically understood to refer broadly to unsolicited e-mail messages (or "junk" e-mail), typically commercial in nature. See *United States v. Kelley, 482 F.3d 1047, 1055* (9th Cir. 2007) (Thomas, J., dissenting).

"Commercial e-mail advertisement" means **any electronic mail message** initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, **or other disposition** of any property, goods, services, or extension of credit. Cal. Business & Professions Code § 17529.1(c).

The term "advertisement" as defined in the statute is somewhat ambiguous due to, *inter alia*, the "other disposition" language. Thus "as in any case involving statutory interpretation, our fundamental task is to determine the Legislature's intent so as to effectuate the law's purpose." See *People v. Cole* (2006) 38 Cal.4th 964, 974-975; *People v. Murphy* (2001) 25 Cal.4th 136, 142 [105 Cal.Rptr.2d 387, 19 P.3d 1129]; *Kleffman v. Vonage Holdings Corp.*, 232 P.3d 625 (Cal. 2010).

State Senator Kevin Murray, D-Culver City, was the sponsor and author of SB 186, now codified as Cal. Business & Professions Code § 17529 *et seq.* Senator Murray said of the bill:

> *"We are saying that unsolicited e-mail cannot be sent and there are no loopholes."*

**See EXHIBIT G**.

A person or entity bringing an action pursuant to subparagraph A may recover both actual and liquidated damages of one thousand dollars ($1,000) for each unsolicited commercial e-mail advertisement transmitted in violation of this section, up to one million dollars ($1,000,000) per incident. The recipient may also recover reasonable attorney's fees and costs." *Id.* at 17529.5(B)(i), (ii) and (C).

Respondent sent 91 unsolicited spam emails to Claimant from September 3, 2021 through November 19, 2021, after the Claimant had clearly and unequivocally withdrawn consent ("opted-out") of all emails from PayPal, pursuant to the provisions of the User Agreement (**Exhibit C**).

Attached herein are five exemplar spam emails from the Respondent. **See EXHIBIT H**. Claimant will provide all 91 emails to the Arbitrator upon request. All of said spam emails contain subject lines such as "We could not process your recurring payment," "An automatic payment from (Customer X) failed," etc. The body of said emails say something like "You did not get your money."

These subject lines are clearly misleading to any reasonable person because 1) Respondent voluntarily and on their own volition, terminated the business agreement with the Claimant on August 9, 2021 (**Exhibit A**), thus there cannot and could not possibly be any transactions at all; and 2)

pursuant to the User Agreement. Respondent also had the right to compel arbitration, pursuant to the User Agreement.

The Respondent had an obligation, pursuant to the User Agreement, to cease all electronic communications once the Claimant exercised the opt-out provision on August 22, 2021. Respondent breached clear provisions of the User Agreement. Respondent also blatantly and wantonly violated California and Nevada law related to spam.

This case could have been avoided had the Respondent honored the User Agreement in good faith. It still could have been resolved once the Notice of Claim was served on October 29, 2021. But the Respondent believes only consumers are bound to their User Agreement, while they may pick and choose which provisions to obey. That's not how contracts work and that's not good faith business.

Pursuant to Nevada and California law, Respondent is liable for $136,500 in statutory damages; and that is the amount demanded in arbitration. Claimant also seeks damages for all costs related to the Notice of Claim, arbitration fees, spam filters, and legal costs.

On this 3rd day of March, 2022

/s/Brian Wilkins

Brian A. Wilkins
Veracity Objectives, LLC.
304 S. Jones Blvd. #1576
Las Vegas, NV 89107
support@veracityobjectives.com
702-218-3225

Claimant, pursuant to the provisions of the User Agreement, opted out of all electronic communications on August 22, 2021 (**Exhibit E**). There was clearly and unequivocally no direct consent from the Claimant for the Respondent to continue sending spam. Respondent had the obligation to, in good faith and in fair business practices, cease sending these spam email. Respondent clearly and unequivocally violated the opt-out provisions of the User Agreement.

The 91 spam emails from September 3, 2021 to November 19, 2021 total liquidated damages of $91,000 pursuant to the foregoing statutes.

## COUNT III: Violations of Nevada code NRS 41.730

Claimant re-alleges the preceding paragraphs as if set forth fully herein.

A person or company violates Nevada law if they "transmit or cause to be transmitted to a recipient an item of electronic mail that includes an advertisement." NRS 41.730(1).

"If a person or company is liable to a recipient pursuant to subsection 1 and the person ignored requests made by the recipient to decline receiving additional electronic mail, then the recipient may recover actual damages or damages of $500 per item of electronic mail received, whichever is greater, and attorney's fees and costs." *Id.* at 3(d).

Claimants principal place of business, as listed on the New Mexico Secretary of State website for Veracity Objectives, LLC., is 304 S. Jones Blvd., Las Vegas, NV 89107.

Respondent sent 91 spam emails despite Claimant opting out THREE times from electronic communication from the Claimant, pursuant to the User Agreement.

Respondent is liable for $45,500 in damages pursuant to Nevada law.

## Conclusion

Respondent had the absolute right to terminate the business relationship between itself and Claimant on August 9, 2021, for whatever reason,